### CENTURY MORTGAGE COMPANY, INC. *v.*
### MARY E. GEORGE
### (12264)

O'CONNELL, LAVERY and CRETELLA, Js.

Argued March 25—decision released August 2, 1994

*David F. Weber,* for the appellants (plaintiffs).

*William T. Barrante,* for the appellee (substitute defendant).

O'CONNELL, J. This is a mortgage foreclosure action in which the plaintiffs appeal from the judgment denying them relief. The plaintiffs are Century Mortgage Co., Inc. (Century), and the Federal Home Loan Mortgage Corporation (Freddie Mac). The plaintiffs claim

that the trial court (1) improperly refused to order fore-closure of the mortgage and (2) improperly refused to enforce the mortgage note. We affirm the judgment of the trial court.

The genesis of the case was the defendant Mary George's desire to provide financial assistance to her son James by mortgaging her house at 23 Catherine Street in Watertown. On August 31, 1988, Mary, a seventy-four year old widow, mortgaged her property in Watertown to secure a $65,000 loan to the First Connecticut Small Business Investment Company. A house at 745 Seventh Ridge Road in Wallingford, which was owned by James' wife, Marie, was also used to secure the loan. The proceeds of the loan were given to James to start a business with an understanding that he would make the mortgage payments.

James' business was short-lived and by early 1989 he needed more money to embark on a new enterprise. He convinced Century to make a $105,000 mortgage loan to Mary. James then persuaded Mary to execute a mortgage deed and note to Century by falsely representing that his arrest for income tax evasion was imminent and he needed the money for the Internal Revenue Service (IRS) to avoid being sent to jail.[1] Mary agreed and on April 10, 1989, executed the mortgage documents. The prior mortgage to First Connecticut Small Business Investment Company was paid off[2] and several days later the net proceeds were wired directly to a bank account controlled by James. Mary never received any of the money.

The $105,000 mortgage note to Century incorrectly specified a fifteen year maturity rather than the thirty year maturity James had negotiated. The mortgage

---

[1] Although James owed money to the IRS it was a purely civil matter with no possible criminal ramifications.

[2] Both Mary's and Marie's mortgages were released at this time.

deed likewise recited the incorrect maturity date and additionally contained an erroneous property description. The first page of the mortgage deed properly indicated that the pledged real estate was located at 23 Catherine Street in Watertown. The actual property description detailed in schedule A, annexed to the mortgage deed, however, was not that of Mary's Watertown property, but was of Marie's Wallingford property. Thus, Century became the holder of a mortgage deed executed by a mortgagor who had no interest in the mortgaged property.

Upon discovering the errors, Century sent a corrected mortgage note and deed to Mary. Although these documents were returned to Century bearing Mary's name on the signature lines, James testified that he had intercepted the papers and forged Mary's signature. The trial court found that the signatures on the new documents were forgeries. The forged mortgage deed was never recorded on the land records.

Although it was agreed that James would make the mortgage payments, he soon defaulted and in March, 1990, Century instituted this foreclosure action. No explanation is offered as to why Century instituted the action in view of its assertion that, almost a year previously, it had assigned its interest to Freddie Mac. Two weeks prior to trial, Century moved to substitute Freddie Mac as the plaintiff because of this assignment. The trial court denied the motion to substitute because the defendant had filed a counterclaim against Century; instead, the trial court added Freddie Mac as an additional plaintiff. After trial, Century and Freddie Mac filed an amended complaint as coplaintiffs in which Freddie Mac is alleged to be the sole holder of the note and mortgage. Century does not seek any relief in the amended complaint.

Mary died of cancer in August, 1990, and the executrix of her estate was substituted as the defendant.

The amended complaint was brought in three counts. The first count sought foreclosure of Mary's Watertown property. The second sought reformation of the note and mortgage to reflect the thirty year maturity date and to substitute the description of Mary's Watertown property for Marie's Wallingford property. The third count sought money damages on the note.[3] The trial court refused to grant any of the plaintiff's requests for relief and found, inter alia, that: (1) The signature on the revised note[4] was forged by James George and was therefore not the signature of Mary E. George; (2) Mary George did not ratify the forged signature; (3) Freddie Mac possessed only the revised note; (4) Century Mortgage never paid the proceeds of the loan to either Mary George or to a third party designated by her but paid them to her son James George; (5) Mary E. George did not expressly authorize that the proceeds of the loan be paid to her son; and (6) Mary E. George never ratified the loan transaction after the fact.

The plaintiffs do not agree with some of the trial court's findings and urge us to consider the evidence and reach different results. It is fundamental appellate jurisprudence that an appellate court does not retry the case and substitute its judgment for that of the trial court. *Malmberg* v. *Lopez*, 208 Conn. 675, 679, 546 A.2d 264 (1988). Rather, it is the function of the Appellate Court to determine whether the decision of the trial

---

[3] Although judgment was rendered in favor of the defendant on all three counts, this appeal is limited to the first and third counts. The plaintiffs do not claim that the trial court improperly denied reformation of the original note and mortgage.

[4] The trial court referred to the forged note as the "Revised note."

court is clearly erroneous. This involves a two part inquiry: (1) where the legal conclusions of the court are challenged, the Appellate Court must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; and (2) where the factual basis of the trial court's decision is challenged the Appellate Court must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous. Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. *Cookson* v. *Cookson,* 201 Conn. 229, 242–44, 514 A.2d 323 (1986). On appeal, the Appellate Court will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 160, 510 A.2d 440 (1986).

We first address the plaintiffs' claim that the trial court improperly refused to enforce the mortgage note. "A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this state action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." *Hartford National Bank & Trust Co.* v. *Kotkin,* 185 Conn. 579, 581, 441 A.2d 593 (1981). Here, the evidence supports the trial court's finding that Freddie Mac had possession of only the forged note and the authentic original mortgage deed. It is undisputed that the plaintiffs sued on the original note, not the forged note. Furthermore, in view of the trial court's finding that Freddie Mac did not possess the original note, it could not sue on

a note that it did not possess.[5] General Statutes § 42a-3-301.[6] Thus, the trial court was correct in rendering judgment for the defendant on the third count.

We turn now to the count seeking foreclosure of the Watertown property with a mortgage describing the Wallingford property. Clearly, this cannot be done. The reformation count was the key to the plaintiff's right to foreclose. When the trial court denied reformation of the mortgage deed it left Freddie Mac with a useless instrument that did not grant Freddie Mac any interest that it could foreclose.[7]

In addition to the obvious problem created by the defective mortgage deed, the trial court also found that Mary never received the proceeds of the mortgage loan, nor did she ratify payment of the proceeds to James. We agree with the trial court's conclusion that conduct that might constitute ratification by sophisticated banking officials does not constitute ratification by a

---

[5] Furthermore, Freddie Mac did not present the original of either mortgage note to the court. If a foreclosing mortgagee does not produce the original of a note, it must account for its whereabouts or how it was lost. *Guaranty Bank & Trust Co.* v. *Dowling,* 4 Conn. App. 376, 381, 494 A.2d 1216 (1985).

[6] Under General Statutes (Rev. to 1989) § 42a-3-301, "[t]he *holder of an instrument* whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in section 42a-3-603 on payment or satisfaction, discharge it or *enforce payment in his own name."* (Emphasis added.) In order to "enforce payment" on the note, Freddie Mac must therefore be a "holder of an instrument." "Holder" is defined under General Statutes § 42a-1-201 (20) as "a person who is in *possession* of . . . an *instrument* . . . drawn, issued or endorsed to him or to his order or to bearer in blank." For Freddie Mac to be a holder of the original note in question, there must be physical delivery. General Statutes (Rev. to 1989) § 42a-3-202 (1). Freddie Mac has only the forged note. As such, Freddie Mac is not a "holder" of the instrument and therefore can not enforce payment of the note.

[7] For a discussion on the necessity of reforming a mortgage deed to correct an error in the property description to reflect the precise property sought to be foreclosed see D. Caron, Connecticut Foreclosure (2d Ed. 1989) § 4.13.

seventy-six year old widow who is dying of cancer. The trial court referred to cases in which defendants who had known for years of unauthorized payments but did not complain were estopped from raising the lack of authorization as a defense in an action to collect the debt. See, e.g., *McKnight* v. *United States,* 98 U.S. 179, 186, 25 L. Ed. 115 (1879); *Los Angeles* v. *Los Angeles County,* 9 Cal. 2d 624, 72 P.2d 138 (1937). The trial court succinctly stated "in *McKnight,* for example, the debtor was a government contractor, and in *Los Angeles* it was the City of Los Angeles. Do equity and justice require the same result with respect to Mary George that they did in the case of these sophisticated debtors? To ask the question is to answer it. . . . [E]quity and justice do not require a conclusion that Mary ratified the unauthorized payment here. In fact, it is the plaintiffs who seek equitable relief . . . and that relief should be denied."

We emphasize that foreclosure is an equitable action; *City Savings Bank* v. *Lawlor,* 163 Conn. 149, 155, 302 A.2d 252 (1972); and that a trial court has discretion, after a review of the equities, to withhold foreclosure. *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 12, 437 A.2d 822 (1980); *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980); *First New Haven National Bank* v. *Rowan,* 2 Conn. App. 114, 118, 476 A.2d 1079 (1984). Our review of the record reveals that the trial court did not abuse its discretion in withholding foreclosure in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.