[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR TEMPORARY INJUNCTION (#106.00)
This case comes to this court on an application for temporary injunction. The plaintiff filed a verified complaint and application for temporary injunction. The court heard the parties and reviewed the evidence, their exhibits, and their briefs. The claim by the plaintiff is that the defendants are requested to immediately return customer lists and customer programmed computer software to the plaintiff, and to immediately return other physical computer records concerning the plaintiff's business which are in the defendants' possession. They are asking an order that the defendants cease using in any way the information taken from the plaintiff's offices and not to contact any of the customers of the plaintiff and to cease soliciting any customers of the plaintiff. They are further asked to surrender to the plaintiff any list, book, memoranda, or any other record they may have concerning the identity and address of any customer of the plaintiff.
The granting of injunctive relief is within the trial court's discretion. Dukes v. Durante, 192 Conn. 207 (1984). Injunctive relief may be exercised only under demanding circumstances. The law in Connecticut is clear that in order to establish injunctive relief the applicant must establish irreparable injury and the lack of an adequate remedy at law. Wad Realty, Inc. v. Licamele,1 Conn. App. 371 (1984). The court has to be satisfied that the plaintiff will likely prevail on the merits of the claim after a full hearing on the permanent injunction and that in the absence of a temporary injunction the plaintiff will suffer irreparable harm, and there is no adequate remedy at law.
The question of irreparable harm and adequate remedy at law CT Page 4332-A are the threshold questions the trial court must first consider. Irreparable injury to justify a temporary injunction is one which is of such a nature that it cannot be adequately compensated in damages or cannot be measured by any pecuniary standard.Connecticut Association of Clinical Laboratories v. ConnecticutBlue Cross, Inc., 31 Conn. Sup. 110 (1973).
An adequate remedy at law means a remedy vested in the applicant, to which he may, at all times, resort, at his own option, fully and freely without hinderance [hindrance]. Brainard v. WestHartford, 140 Conn. 631 (1954). In the instant case, the plaintiff has alleged that it communicated and provided to the defendant, Maurice Acuna, its customer list data base of all merchants with whom the plaintiff was doing business, the rates being paid by the customers to the plaintiff, and the expiration dates of the contracts with its customers. See Paragraph 8 of the First Count.
In addition, the plaintiff has alleged that it confided in and entrusted to the defendant, Maurice Acuna, every business secret known or acquired by the plaintiff including its customer list data base and customer programmed computer software. See Paragraph 9 of the First Count.
The plaintiff through its President, Dennis Kameon [Kamoen], claimed that they maintained two lists. The first was a customer list data base, and a second list was a "leads" data base. The court finds Maurice Acuna had no restrictive covenant or covenant not to compete with the plaintiff.
Kim Chiapetta was the former office manager of the plaintiff. She indicated that she had no idea what the customer list data base was. She did testify that there was a "leads" data base and that she did input leads into this data base. This data base had information which included the name of the company, its mailing address, telephone number and facsimile number. She testified that the "leads" data base did not contain any information regarding geographical breakdown, volume, or similar information on the prospective customer. She further testified that she never inputted any type of information into the customer list data base, nor even knew of its existence. The defendant, Maurice Acuna, testified that he never had heard of a customer list data base and had never inputted any information into such a list. The defendant agreed there was a "leads" data base.
The defendant, Clement Kamoen, the brother of the plaintiff's CT Page 4332-B president, also testified that he had no knowledge of a customer list data base maintained by the plaintiff. He further testified that he obtained many of the "leads" for the plaintiff by copying the return mail addresses on junk mail received at Perkin-Elmer Corporation. The plaintiff maintained that there was a password to get into the plaintiff's computer programs, including the customer list data base and the "leads" data base. Neither, Kim Chiapetta, Maurice Acuna, or Clement Kamoen confirmed that a password was maintained. Ms. Chiapetta had no idea about a password, and she indicated she needed only to turn on the computer to access any of the programs. The defendant, Maurice Acuna, was terminated on November 23rd without prior warning and he claims that he took nothing of the plaintiff with him. He further testified that he never contacted any of the plaintiff's customers or "leads" for his business prior to being terminated.
It is clear to this court that when an employee leaves the employ of his principal he has the right to compete with his former employer in matters for which he had been employed, in the absence of a restrictive covenant to the contrary. Also, he cannot solicit customers for his own account before the end of his employment in direct competition with the employer's business. Also, the employee is not entitled to use confidential information or trade secrets in competition with his principal but rather he may use general information concerning the method of business of the principal and the names of customers retained in his memory. SeeTown and Country Homes Service, Inc. v. Evans, 150 Conn. 314
(1963).
Under Connecticut common law, matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his own secret. The Connecticut Uniform Trade Secrets Act, Connecticut General Statutes § 35-50 et seq., codify the basic principals of common law trade secret protection. In order to establish liability under the Connecticut Uniform Trade Secrets Acts, the plaintiff must prove the existence of a trade secret by § 35-51(d) and a misappropriation of the trade secret by the defendant as defined by § 35-51(b). The court finds that this list was not a trade secret and that there was not misappropriation by the defendant. An element of secrecy must exists to the extent that it would be difficult for someone else to acquire the information except by the use of improper means. There is no trade secret if the customers' names can be readily ascertained through ordinary business channels or reference sources. Robert S. Weiss Associates, Inc. v. Wiedelight, 208 Conn. 525 (1988). The court CT Page 4332-C finds that the "leads" data base is not a customer list. It is a list of potential customers, and it is, therefore, not a trade secret.
Some of the factors the Connecticut courts have used to determine whether the information is a trade secret is as follows: 1. the extent to which the information is known outside the business; 2. the extent to which it is known by employees and others involved in the business; 3. the extent of measures taken by the employer to guard the secrecy of the information; 4. the value of the information to the employer and his competitors; 5. the amount of effort or money expended by the employer in developing the information; and 6. the ease or difficulty with which the information could be properly acquired or duplicated by others. Town Country, supra. This court finds that the "leads" data base does not qualify as a trade secret. Customer lists, themselves, are on the periphery of the law of trade secrets. Whether a particular use of a customer list by a former employee constitutes an exercise of his right to use general knowledge and experience gained in his former employment, or whether it violates his confidential relationship with his former employer not to use trade secrets or confidential information acquired in the course of his former employment depends on the particular facts and circumstances involved.
In the instant case, the "leads" of the plaintiff were obtained from business directories, college and university directories, telephone books, junk mail and drive-by sightings of existing companies. The court finds that Maurice Acuna took nothing with him when he was terminated. This was confirmed by Ms. Chiapetta. The court finds credible his testimony that he never utilized any trade secret or any other information of the plaintiff in his new entrepreneurial endeavor. The court finds that the "leads" data base did not contain any detailed information of the customers' buying habits, requirements, preferences or other difficult to obtain data. The court finds that there was no confidential information or trade secret information taken by Maurice Acuna. The plaintiff has not sustained his burden in this case as previously set forth in order for this court to grant a temporary injunction. The court denies the request for temporary injunction.
KARAZIN, JUDGE CT Page 4332-D