# SKW REAL ESTATE LIMITED PARTNERSHIP *v.* MITSUBISHI MOTOR SALES OF AMERICA, INC.
## (AC 17397)

O'Connell, C. J., and Spear and Dupont, Js.

Argued December 9, 1998—officially released November 30, 1999

1

*Linda L. Morkan,* with whom, on the brief, was *Diane R. Hayes,* for the appellant (plaintiff).

*George M. Purtill,* with whom, on the brief, was *Seth Jacoby,* for the appellee (defendant).

*Opinion*

SPEAR, J. The plaintiff, SKW Real Estate Limited Partnership (SKW), appeals from the judgment of the trial court rendered in favor of the defendant, Mitsubishi Motor Sales of America, Inc. (Mitsubishi), on SKW's claim that Mitsubishi breached a commercial lease by failing to pay rent. The principal issue is whether the doctrine of judicial estoppel bars SKW from claiming here that a lease existed in light of SKW's representation in an earlier foreclosure proceeding that the premises were vacant. SKW also claims that the trial court improperly concluded that SKW, an assignee of rent, could not recover because it was not the holder of a certain note that was secured by the assignment of rents. We reverse the judgment of the trial court on SKW's complaint.[1]

The record reveals the following factual and procedural history. In 1988, Seaview Realty (Seaview) borrowed $6.6 million from Connecticut National Bank (CNB) to construct a five unit commercial condominium known as the Auto Mall in Old Saybrook. Seaview executed a $6.6 million note to evidence the loan. The following year, Seaview obtained a second loan from

---

[1] Mitsubishi has not appealed from the judgment for SKW on Mitsubishi's counterclaim.

CNB in the amount of $300,000, also evidenced by a note. These notes were secured by mortgages on the Auto Mall property and conditional assignments of rent.

Seaview thereafter leased unit one of the property to Mitsubishi for a ten year term commencing on September 1, 1990. Shortly thereafter, Mitsubishi sublet the premises to Seaview Automotive, Inc., doing business as Quality Mitsubishi (Quality), which vacated the premises in October, 1990. Mitsubishi continued to make its rental payments to Seaview and to search for a replacement dealer.

On or about June 23, 1993, CNB (then known as Shawmut Bank Connecticut, N.A.) assigned the notes, mortgages and two conditional assignments of rents for the Auto Mall to SKW. Seaview eventually defaulted on its obligations under the notes and Mitsubishi consequently began making its rental payments to SKW in accordance with the lease and assignment of rents. Shortly after Seaview's default on the $300,000 note, SKW commenced an action to foreclose on units one and four of the Auto Mall.[2]

During the foreclosure action, SKW obtained an appraisal of units one and four from Edward F. Heberger & Associates (Heberger). The Heberger appraisal report, dated July 8, 1994, included Mitsubishi's lease of unit one as a factor in determining the value of unit one to be $1,460,000. Unit four was assigned a value of $1,200,000 for a total appraised value of $2,660,000 for the two subject properties.

After Mitsubishi stopped paying rent in June, 1994, SKW hired Francis J. Buckley, Jr., to appraise the units. Buckley opined in an appraisal report dated October

---

[2] The trial court took judicial notice of the foreclosure action titled, *SKW Real Estate* v. *Seaview Realty*, Superior Court, judicial district of Middlesex, Docket No. CV-94-0071838.

9, 1994, that units one and four were worth $620,000 and $708,000 respectively for a total value of $1,328,000.

At the November 14, 1994 hearing on SKW's motion for a judgment of strict foreclosure, SKW presented the Buckley appraisal. In response to an inquiry during the hearing, counsel for SKW told the court that the property was vacant. The foreclosure court thereafter granted SKW's motion for a judgment of strict foreclosure and set the earliest possible law day twenty-one days later. SKW obtained title to the properties on December 14, 1994.

In September, 1994, SKW commenced the present breach of lease action against Mitsubishi for unpaid rent from July, 1994, through the end of the ten year term. Mitsubishi denied that it owed any rent and claimed, inter alia, that SKW should be prevented from prosecuting this claim because it had represented to the foreclosure court that the premises were vacant, thereby implying that there was no lease. The trial court rendered judgment for Mitsubishi after concluding that the doctrine of judicial estoppel prohibited SKW from asserting here that it had a valid lease with Mitsubishi, when, in the foreclosure proceeding, SKW took the contrary position. This appeal followed.

I

We first address Mitsubishi's claim that the trial court did not rely on judicial estoppel in rendering its decision. Mitsubishi asserts that the court found that SKW accepted Mitsubishi's surrender of the lease, thereby relinquishing all of its rights against Mitsubishi. This assertion is based on two sentences of the trial court's five and one-half page memorandum of decision. Each sentence notes that certain evidence and actions of

SKW were consistent with an acceptance of the surrender of the lease.[3] We are unpersuaded for several reasons.

First, Mitsubishi filed nine special defenses, including three that raise estoppel, but did not plead acceptance of a surrender of the lease. It now contends that the trial court ignored the estoppel claims that it did plead and decided the case on a defense that was not pleaded. To recite the claim is to refute it. Second, although the court found that certain matters were consistent with an acceptance of surrender, it did not find such acceptance as a fact. We note that our Supreme Court has held that acceptance of the surrender of a lease must be shown by "an unequivocal act" on the part of the lessor showing an intent to accept the surrender. *Thomas* v. *Roper*, 162 Conn. 343, 351, 294 A.2d 321 (1972). The trial court spoke of acts that were consistent with acceptance of surrender, but not of unequivocal acts.

Most importantly, the court's legal analysis focused exclusively on estoppel, except for the two sentences on which Mitsubishi relies. In its memorandum, the trial court stated that "[t]o allow SKW to now take the position that the lease continues in full force, in effect, would upend the doctrine of judicial estoppel, and would be both unjust and unseemly." The court clearly stated the basis for its decision by declaring: "Indeed, this court finds that the information provided to the court in the earlier matter will determine, based on

---

[3] The first sentence appears on page three of the memorandum of decision and states: "In any event, it appears to this court that the evidence offered in the foreclosure proceeding and the responses of counsel to inquiry of the court were *consistent* with an acceptance of the surrender, which rendered the premises vacant." (Emphasis added.) The second sentence begins at the bottom of page five and states: "The court does find that SKW's action regarding the appraisal and the equipment stripped from the premises are *consistent* with an acceptance of the surrender of the lease regardless of communications to the contrary." (Emphasis added.)

the doctrine of judicial estoppel, the outcome of this action." Mitsubishi's claim that the trial court decided the case on the basis of SKW's having accepted a surrender of the lease is without merit.

## II

The court, in applying the doctrine of judicial estoppel, stated: "The foreclosure court relied upon [information that the premises were vacant] and evidence in reaching its judgment of strict foreclosure, setting a law day and determining a deficiency." "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Hutchinson* v. *Andover*, 49 Conn. App. 781, 787, 715 A.2d 831 (1998). We conclude that the trial court's factual conclusions are clearly erroneous.

The court first determined that SKW took different factual positions in this case and in the foreclosure case. This conclusion is based on the court's view that the failure to disclose the lease coupled with the representation that the premises were vacant was tantamount to a representation that no lease existed. In so concluding, the court failed to consider that the Buckley appraisal did disclose the claimed lease, but assigned no value to it. The report stated: "[The site] is currently vacant although it is reportedly still under lease to Mitsubishi." Moreover, stating that premises are vacant is not logically inconsistent with claiming that the party who vacated did so in violation of a lease.

Because there was no equity in the properties, based on either the Heberger or the Buckley appraisal, counsel's statement to the foreclosure court that the premises were vacant could not have been a significant factor in the court's decision to render a judgment of strict foreclosure. The lack of equity virtually dictated such a judgment.[4] "[T]he determination of value is a major factor in the decision whether to allow a foreclosure by sale rather than a strict foreclosure." *Farmers & Mechanics Bank* v. *Arbucci*, 24 Conn. App. 486, 487, 589 A.2d 14, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). "Once the trial court determined a value and found that the debt exceeded the value . . . there was no abuse of discretion in ordering strict foreclosure." Id., 488. The early law date would undoubtedly have been set even if the Heberger valuation of the lease had been presented and accepted by the court because of the discrepancy between the total debt and the value of the property. We conclude that the trial court's factual conclusion that the strict foreclosure and early law day resulted from the statement by SKW's counsel that the premises were vacant is clearly erroneous.

The trial court also concluded that the foreclosure court relied on the vacancy representation in determining a deficiency. Mitsubishi makes no claim that such a representation was made at the deficiency judgment hearing and the record discloses none.[5] In addition, "the value placed on the property by the court for the purposes of rendering judgment of strict foreclosure

---

[4] Heberger valued unit one with the lease at $1,460,000. Buckley valued the unit at $620,000, assigning no value to the lease. Even if we assume that the $840,000 difference is the value of the lease, there would still be no equity. Adding $840,000 to Buckley's valuation would increase the total value of the properties to $2,168,000. This is less than the total debt of over $2,700,000.

[5] Mitsubishi offers no authority in support of its implied claim that SKW was under an obligation to advise the deficiency court of the higher Heberger appraisal.

and setting law days was irrelevant to a subsequent deficiency judgment proceeding." *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 457, 582 A.2d 182 (1990). The trial court improperly concluded that the statement that the premises were vacant affected the determination of the deficiency.

We now address the estoppel issue. Our Supreme Court recently stated, in the context of an equitable estoppel claim, that "[t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) *W* v. *W*, 248 Conn. 487, 496–97, 728 A.2d 1076 (1999).

We do not have to determine whether Connecticut recognizes the doctrine of judicial estoppel[6] because there is no factual basis to apply any estoppel principles here. Whether the estoppel be equitable or judicial, both types require misleading conduct by a party that causes another to act based on that conduct. "The party claiming estoppel has the burden of proof and whether that burden has been satisfied in a particular case is a question of fact." *Soares* v. *Max Services, Inc.*, 42 Conn. App. 147, 170, 679 A.2d 37, cert. denied, 239 Conn. 915,

---

[6] In a leading case on judicial estoppel by the United States Court of Appeals for the Second Circuit, the court stated that there are two elements to the doctrine: "First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Bates* v. *Long Island R. R. Co.*, 997 F.2d 1028, 1038 (2d Cir.), cert. denied, 510 U.S. 992, 114 S. Ct. 550, 126 L. Ed. 2d 452 (1993).

682 A.2d 1005 (1996). We conclude that Mitsubishi failed to carry that burden in the trial court because the court had no factual foundation for applying the doctrine of judicial estoppel. SKW's action to collect the rent is, therefore, not barred by the doctrine.

### III

The trial court also concluded that SKW could not collect on the underlying $6.6 million note because it did not have possession of that note.[7] SKW did not sue on a note and made no such allegations in its complaint. This action is neither a mortgage foreclosure nor a deficiency judgment proceeding. Rather, SKW brought this suit as an assignee of rents pursuant to an assignment. By paying the rent through June, 1994, Mitsubishi acknowledged the validity of the assignment. Moreover, the foreclosure action at issue in the judicial estoppel claim was based on the $300,000 note. The trial court's ruling with respect to the $6.6 million note had no bearing on the case.[8]

The judgment for Mitsubishi on SKW's complaint is reversed and the case is remanded for a new trial on the complaint only.[9]

In this opinion the other judges concurred.

---

[7] The trial court's decision on this issue is as follows: "The court also finds that SKW has never been the holder of the underlying note in this action and is therefore prohibited from collecting upon it. The implication of *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996), is that the lack of possession of the note is fatal. SKW's claim is unpersuasive, as it did not lose the note; it was never in possession of the note. See also *Century Mortgage Co.* v. *George*, 35 Conn. App. 326, 646 A.2d 226 [cert. denied, 231 Conn. 915, 648 A.2d 150] (1994)."

[8] Mitsubishi claims that "[t]o the extent that SKW claims it has always been the holder of the $300,000 note, any remaining debt after SKW's foreclosure has already been satisfied" and that the foreclosure resulted in a merger of any remaining debt on the $300,000 note "with SKW's title to the property, thereby extinguishing the debt." The trial court did not address these claims and, therefore, we will not review them.

[9] Mitsubishi offers several alternative grounds for affirmance: (1) certain equipment was sold or removed and the removal constituted a constructive eviction, (2) the failure of SKW and its predecessor to pay back taxes, to

---

the extent that a tax sale was threatened, amounted to a constructive eviction of Mitsubishi; (3) SKW breached its obligation pursuant to a subordination, attornment and nondisturbance agreement by naming Mitsubishi as a defendant in the foreclosure action; and (4) SKW wrongfully sought possession of the premises in violation of Mitsubishi's right to quiet enjoyment. Each of these grounds requires factual findings by the trial court, but the trial court made no such findings. Mitsubishi's brief points only to evidence on which the court *could* have made such findings. This record is not adequate for us to review any of the claimed alternative grounds for affirmance.

