[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present action arises out of a power struggle within the Stamford Historical Society, Inc. (Historical Society). The plaintiffs Walter H. Wheeler, III and the Historical Society filed a one count complaint against the defendants Patricia Kane, Linda DeMott, Renee Kahn, Diane Tatro, Edward Tatro and Hilda Cook. The plaintiffs claim that the defendants nominated and elected directors of the Historical Society in a manner contrary to the provisions of the Historical Society's by-laws. The plaintiffs seek a judgment declaring the purported election of new directors to the Historical CT Page 5328 Society on June 14, 1999 null and void, declaring the actions of these "new directors" at a meeting on June 17, 1999 invalid and restraining or enjoining the defendants from holding themselves out as officers of the Historical Society. The defendants have filed a cross complaint also seeking a declaratory judgment.[1] The court orders a new election of the members. The Historical Society did not have a parliamentarian as of June 14, 1999.
The procedures for nominating members of the Board of Directors are enumerated specifically in the Historical Society's by-laws. They provide for the existence of a nominating committee. (See Plaintiff's Exhibit 1: By-laws art. nine.) At the annual meeting, "a slate of nominations drafted by a Nominating committee shall be presented to the membership." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).) The by-laws further elaborate that "[t]he Committee shall present its report at the May meeting of the board prior to said annual meeting." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).)[2] Aside from nominations from the nominating committee, the Historical Society's by-laws provide for further nominations made by members. (See Plaintiff's Exhibit 1: By-laws art. six, § 4(a).) "Such nominations shall be in writing and shall be signed by at least twenty (20) members qualified to vote, and such written nominations shall be posted not less than ten (10) days prior to the election." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).)
Pursuant to the Historical Society's by-laws, the nominating committee presented a report to the board of directors in its May 1999 meeting. This report did not disclose the names of the individuals included on the slate of nominees scheduled to be presented at the annual meeting. The Historical Society held its annual meeting on June 14. 1999. While thirty to forty people typically attended annual meetings, more than eighty people packed into the Historical Society's 1999 annual meeting. Michael Meyer, chairman of the nominating committee, presented the nominating committee's slate of nominees. A motion was made to take nominations from the floor. A discussion concerning the right to vote of "six-month members" ensued. Wheeler ruled that such members were not entitled to vote pursuant to the Historical Society's by-laws.
The meeting became disorderly and noisy. People were speaking without being recognized. One member waved ten dollar bills in order to buy memberships. Other individuals claiming to be attorneys argued that state law would override the by-laws, and that the "six-month members" must be allowed to vote. Kane appealed Wheeler's ruling and those in attendance sustained Kane's appeal. The motion to accept motions from the floor was reintroduced. This motion also passed. CT Page 5329 Twenty nominations from the floor were accepted, nineteen of which appeared on a list prepared prior to the meeting with Renee Kahn's name and apparently her phone/fax number listed at the top. (See Plaintiff's Exhibit 5.)
Subsequent to the acceptance of floor nominations, one member moved that the vote concerning new directors be suspended until biographical information concerning the floor nominees could be circulated to the membership. Wheeler testified that this motion was "shouted down." A fifteen minute recess occurred in order to distribute the list of floor nominees. After the recess, the meeting became increasingly disruptive. Wheeler noticed that the room was filled with many angry people on both sides of the issues. He adjourned the meeting without calling for a vote of the members in opposition.
Following Wheeler's adjournment of the annual meeting, about half of the people attending the annual meeting left. However, the defendants and other Historical Society members purportedly reconvened the annual meeting and elected new directors to the Historical Society (the defendants' board). These individuals did not reelect Wheeler. Wheeler attended this meeting but did not participate. On June 17, 1997, the defendants' board held a meeting. Wheeler did not receive notice of this meeting despite provisions in the Historical Society's by-laws that permitted him to remain on the board of directors for one year following the expiration of his term as president. (See Plaintiff's Exhibit 1: By-laws art. eight, § 4.)
After the June 14, 1999 meeting, Wheeler took his own steps to reconvene the meeting that he purportedly had adjourned. In a letter dated June 17, 1999, Wheeler caused notice of a "Continuance of the June 14, 1999 Annual Meeting" to be mailed to membership in the Historical Society as of May 20, 1999, the date that the original notice of the annual meeting had been sent. (See Plaintiff's Exhibit 6.) Several individuals participated in a telephone campaign where members were encouraged to vote either by attendance at the "continued meeting" or by completing a proxy if they could not attend. Wheeler sought legal counsel and engaged the services of a parliamentarian.
On June 28, 1999, Wheeler purportedly reconvened the annual meeting. Wheeler had a guard posted at the door to admit only people who were annual members of the Historical Society as of May 20, 1999. He also had legal counsel and a parliamentarian present. Several times Kane sought to make a point of order during the meeting, and Wheeler refused to recognize her. Prior to the election, the CT Page 5330 defendants departed the meeting and did not vote. The nominating committees' slate of nominees were elected at the June 28, 1999 meeting.
The proper resolution of this case requires the court to determine several issues including (1) whether the election held on June 14, 1999 was valid; (2) whether the election held on June 28, 1999 was valid; and (3) if neither election was valid, who should be permitted to vote in any future election.
The court holds that the election held subsequent to Wheeler's adjournment of the June 14, 1999 annual meeting was invalid because "six-month members" were allowed to vote, floor nominations were accepted and it is apparent from the record that the June 14 meeting was chaotic. Article six, § 1(a) of the Historical Society's by-laws provide: "Membership in the Society will be on an annual basis." By its very terms, "six-month members" are not "members" as defined by the Historical Society's by-laws. Instead, a reasonable interpretation of a "six month membership" would construe it as allowing individuals to join the Historical Society on an introductory basis in order to determine if it is something they would like to pursue on a more active basis. The defendants' position that persons choosing to become "six-month members" would be deceived if they were not permitted to vote at the annual meeting is without merit. The court does not see the right to vote as a reasonable expectation of any "six month member." Any person who was concerned enough about their right to vote as a "six month member" should have consulted the Historical Society's by-laws in order to learn about such rights. Regardless, the defendants did not provide any testimony from "six month members" indicating that they were deceived.
The use of floor nominations also violated the Historical Society's by-laws. The Historical Society's by-laws provide: "The order of business at the annual meeting of the members of the Society, or at any special meeting, as far as practicable shall follow ROBERT'S RULES OF ORDER, REVISED." (Plaintiff's Exhibit 1: By-laws art. six, § 4(e).) The defendants argue that Robert's Rules of Order, Revised (Robert's Rules) provides for nominations from the floor. See Robert's Rules, § 66. However, such an interpretation of the by-laws would render the petition and notice provisions explicitly mentioned in the by-laws moot. As articulated earlier, the by-laws provide for nominations by the nominating committee and by members. Nominations by members "shall be in writing and shall be signed by at least twenty (20) members qualified to vote, and such written nominations shall be posted not less than ten (10) days prior to the election." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).) "It is well-settled principle of [statutory] construction that CT Page 5331 specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." In re Darlene C., 247 Conn. 1, 14, 717 A.2d 1242
(1998). The court believes these same principles that govern statutory construction should govern the Historical Society's by-laws. While the court notes that Robert's Rules apply as far as practicable to the conduct of the meeting, specific provisions in the Historical Society's by-laws provide the mechanism for nominations. Therefore, any floor nominations were invalid.
The court also holds that the provisions of the Historical Society's by-laws concerning the manner of nominating directors have not been waived. The defendants claim that there has been a continued disregard of the Historical Society's by-laws for years because floor nominations have been accepted in the past. However, the by-laws were last amended in 1997. If the Historical Society intended to permit floor nominations, it could have done so by amending the by-laws to reflect this at that time. Instead, they remained unchanged. Therefore, any claim that the Historical Society's by-laws regarding nominations have been waived is without merit.
The doctrine of equitable estoppel also may not be applied to permit floor nominations. "[T]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby must actually change his position or do something to his injury which he otherwise would not have done." (Internal quotation marks omitted.) SKW Real Estate Ltd Partnership v. Mitsubishi MotorSales of America, Inc., 56 Conn. App. 1, 8, 741 A.2d 4 (1999). The court finds that Wheeler and the Historical Society did not intend or calculate to induce Historical Society members to rely upon floor nominations. Therefore, the doctrine of equitable estoppel is not applicable to this case.
The court finds that such a state of disorder occurred at the annual meeting that Wheeler was entitled to adjourn the meeting unilaterally. Robert's Rules § 44 provide that a chairman may end debate when an individual attempts to obstruct business, and the chairman may protect the assembly from annoyance. See also Robert's Rules § 40. Robert's Rules also provide that the chairman may adjourn the assembly in the case of a very serious disorder. See Robert's Rules § 58. The meeting was loud and disruptive with many people in attendance speaking without being recognized. Many people were attempting to cause disorder at the annual meeting including one individual who waved $10 bills and offered to pay for "six month CT Page 5332 memberships" while the meeting was being conducted. Others claimed that the by-laws violated state law.
Wheeler was presiding over the annual meeting of a nonprofit, nonstock corporation filled with angry people operating in total disregard of the Historical Society's by-laws. Instead of allowing the chaos to continue, he decided to adjourn the meeting, consult counsel and hire a parliamentarian. Robert's Rules governed the meeting as far as practicable.[3] (See Plaintiff's Exhibit 1: By-laws art. six, § 4(e).) While the court acknowledges that Wheeler's understanding of Robert's Rules was limited, the court believes that Wheeler conducted and concluded the meeting reasonably under the circumstances.[4] Therefore, any election on June 14, 1999 subsequent to Wheeler's adjournment and the exit of about half of those in attendance was invalid.
Despite the invalid election at the June 14, 1999 meeting, the court holds that Wheeler also conducted an invalid election on June 28, 1999. The court holds that the Historical Society used an improper record date, failed to provide adequate notice to its members and permitted the use of proxies contrary to the Historical Society's by-laws. Without a valid election since 1998, the court orders a new election.
The defendants argue that Robert's Rules demanded that Wheeler's adjournment of the June 14, 1999 meeting required a new record date and a new notice to members. "When [an] adjournment closes a session in an assembly which does not meet as often as quarterly, or when the assembly is an elective body, and this session ends the term of a portion of the members, the adjournment puts an end to all business unfinished at the close of the session. The business may be introduced at the next session, the same as if it had never been before the assembly." Robert's Rules § 17(c). The defendants argue that the Wheeler's adjournment put an end to all unfinished business, and the election had to be considered as if it were a new item at a subsequent meeting. The court agrees. The Historical Society's by-laws provide that the terms of certain directors expired at the end of three years. (See Plaintiff's Exhibit 1: By-laws art. seven, § 3.) The annual meeting ended the term of certain directors and closed that session despite the provisions of General Statutes § 33-1085 (e) that expended the service of certain directors.[5] The Historical Society was required to set a new record date for the June 28, 1999 meeting. Having failed to do so, Wheeler conducted an invalid election on June 28, 1999.
The Historical Society also failed to render adequate notice of CT Page 5333 the June 28, 1999 meeting in compliance with its by-laws. The Historical Society's by-laws provide in relevant part: "Notice of the annual meeting shall be given to each member by mail at least the (10) business days prior to such meeting, and location thereof in a newspaper having local circulation in Stamford at least ten (10) business days prior to such meeting." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).) "Notice for [a] special meeting shall be given in the same manner as the Annual Meeting as set forth in subparagraph (a) above." (Plaintiff's Exhibit 1: By-laws art. six, § 4(b).) The notice of the "continued meeting" was dated June 17, 1999. (See Plaintiff's Exhibit Six.) The "continued meeting" occurred on June 28, 1999. Such notice did not give the Historical Society's membership the necessary notice of ten business days according to the Historical Society's by-laws. Regardless of whether the plaintiffs correctly determined the record date, the court concludes that any action conducted at the June 28, 1999 meeting was invalid because of the improper notice provided to members.
In addition, the use of proxies did not comply with the Historical Society's by-laws. General Statutes § 33-1072 provides: "Unless the certificate of incorporation or bylaws provide otherwise, a member entitled to vote may vote in person or by proxy." Within the section regulating the notice and nomination procedures in the annual meeting, the Historical Society's by-laws provide in relevant part: "The individual receiving the highest number of votes by those present shall be elected to the Board of Directors." (Plaintiff's Exhibit 1: By-laws art. six, § 4(a).) Since the Historical Society's by-laws limits voters to "those present," the use of proxies was improper at the June 28, 1999 meeting.
The court orders a new election. Such election shall occur on May 26, 2000. All members of the Historical Society as of May 25, 2000,[6] as defined by article six, section one of the Historical Society's by-laws, shall be entitled to vote. (See Plaintiff's Exhibit 1: By-laws art. six, § 2.) The Historical Society shall send, by mail, written notice within seven days of this decision to all members of the Historical Society as of April 30, 1999 and comply with the notice provisions of its by-laws concerning notice to members. (See Plaintiff's Exhibit 1: By-laws art, six, § 4.) In addition, publication in a newspaper having local circulation in Stamford shall appear at least ten business days prior to such election. (See Plaintiff's Exhibit 1: By-laws art. six, § 4.) Pursuant to General Statutes § 33-1063 (b), the court shall retain jurisdiction over the election and may appoint a designee to oversee such election. The term of such directors shall be until the Historical Society's annual meeting in 2002. CT Page 5334
HICKEY, J.