[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SANCTIONS AND JUDGMENT OF DISMISSAL
The defendants have filed a March 17, 2000 Motion for Sanctions against the two plaintiffs and a judgment of dismissal as to plaintiff, Douglas CT Page 6743 Staley. The defendants allege multiple and continuing discovery violations. The relief sought against plaintiff Frank Usowski, is an order that Mr. Usowski pay in advance the deposition costs of the remaining 122 witnesses disclosed by him in his discovery compliance. As against plaintiff Douglas Staley, the defendant seeks a dismissal of his complaint.
FACTS
On June 25, 1998, the plaintiffs filed a thirteen count complaint against Barry Jacobson individually; Pet Pantry Super Discount Stores, LLC.; and Pet Pantry Warehouse, a general partnership. The complaint alleged breach of contract; breach of fiduciary duty; declaratory judgment as to plaintiffs' claim of 48% ownership in Pet Pantry Super Discount Stores, LLC; injunctive relief dissolution of the LLC; receivership and accounting; theft in violation of General Statutes §52-564; fraudulent inducement; tortious interference; unjust enrichment; quantum merit; violation of The Connecticut Unfair Trade Practices Act; and expulsion of partners. Contemporaneously with the filing of the lawsuit, the plaintiffs filed an application for the appointment of a temporary receiver. An order to show cause was issued. The order to show cause hearing date was continued and has never been rescheduled. The continuance was for the purpose of conducting depositions and discovery.
Based upon the pleadings and representations made by counsel, the defendant, Pet Pantry Super Discount Stores, LLC, is a going business currently operating at a well known location in downtown Greenwich, CT. Based on counsel's representation, Mr. Jacobson is currently associated with the business and Mr. Usowski and Mr. Staley are no longer associated with the business. The defendants filed a verified answer, special defenses and counterclaims on October 15, 1998. The five counterclaims are against Mr. Staley for $12,939.34 for money lent; $1,030.00 for accounts receivables; conversion of $10,000; destruction of an automobile and conversion and/or theft of $3,000 cash. More than 100 pleadings have been filed in this case, the majority of them addressing discovery issues. Discovery issues are so voluminus that the file contains 24 separate folders.
At a prior hearing the court found that the two plaintiffs were guilty of a violation of a production request by failing to produce documents. This court granted a Motion to Compel and "Ordered that the documents that have been produced and those documents that are not produced both as to Mr. Staley and Mr. Usowski, are to be taken as establishing that both plaintiffs were employees of Pet Pantry and not partners or owners. At a jury trial the court will instruct the jury that must be taken as a fact." This order was rendered pursuant to Practice Book § 13-14(b)(3). CT Page 6744 "The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order."
This instant Motion for Sanctions and Judgment of Dismissal arose out of the September 8, 1999 compliance by the two plaintiffs in response to interrogatories served on them by the defendants. The plaintiffs identified 122 individuals who they claim had witnessed the defendant, Barry Jacobson, refer to the plaintiffs in some Pet Pantry ownership capacity. Interrogatory 21 stated: "Identify all persons with knowledge regarding Staley's status as an employee of Pet Pantry, including but not limited to, all persons who have witnessed Barry Jacobson refer to Staley as an employee of Pet Pantry." Identical interrogatories were asked of Staley as to his status as "partner of Pet Pantry" and "member of Pet Pantry." Three additional identical interrogatories were asked of Usowski as to "employee" "partner" and "member". There were six interrogatories. The two plaintiffs replied to each interrogatory with virtually the same list of 122 separate names. The defendants responded by filing a motion claiming that the plaintiffs were guilty of discovery abuse by "name dumping" 122 individuals, thereby forcing the defendants to take 122 depositions and increasing litigation costs. This Motion for Sanctions came before this court for oral argument. The plaintiffs had ample opportunity prior to the oral argument to amend their interrogatories by reducing the number of names.
At the hearing this court ordered that no party contact any of the 122 people mentioned in the interrogatories. The defendants were ordered to depose four of the 122 selected by the defendants at random at the defendants' own expense. This court further ruled that if those four individuals had not heard Mr. Jacobson refer to the plaintiffs either as "partner" or "member" or in any other ownership capacity of Pet Pantry, the plaintiffs may be required to pay the costs of taking the remaining 122 depositions in advance.
In compliance with that court order, the defendants noticed and took the following depositions: Robert Ginzberg on February 3, 2000 in Garden City, NY; Frederick DeTommasso on February 2, 2000 in Hackensack, NJ; Robert Pickett, Jr. on February 8, 2000 in Smithfield, RI; and Ken Berenson on February 28, 2000 in White Plains, NY. Only after the defendants had identified these four deponents in a notice of deposition did the plaintiffs on December 28, 1999 amend the interrogatory responses by reducing the 122 names to 39 names.
Attached to the Motion for Sanctions dated March 17, 2000, was a copy of the transcripts of these four depositions. This court has read each of CT Page 6745 the depositions and concludes that none of the deponents testified that Barry Jacobson had referred to either Frank Usowski or Douglas Staley as a partner, member or owner of Pet Pantry or any other Pet Pantry entity.
The court finds both plaintiffs have been guilty of discovery violations by listing 122 names as witnesses. The court believes that the remedy suggested by this court at the oral hearing as to Mr. Usowski is appropriate. Practice Book § 13-14(a) provides: "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead . . . the judicial authority may, on motion, make such orders as the ends of justice require." "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 1-8. Under Practice Book § 13-14(b) the sanctions for a discovery violation, "may include the following . . . (2) [t]he award to the discovering party of the costs of the motion, including a reasonable attorney's fee." The list, therefore, is not exclusive. The court finds that the "name dumping" by Frank Usowski and Douglas Staley was false, answered the interrogatories unfairly and was done to mislead the defendants and prevent the taking of the depositions due to the high costs involved. One of the sanctions is to pass on to the offending party the cost of the non-compliance. This court will order that result as to Frank Usowski.
The deposition of Ginsberg is 44 pages in length, DeTommaso 42 pages, Pickett 62 pages and Berenson 110 pages. These four depositions totaled 258 pages, an average of 64 pages per deposition. The current charge for non-expedited depositions is $1.75 a page. The average cost of 64 pages is $112. In addition, the average deposition would take about two hours of attorney's time at an approximate cost of $500. Each deposition should average $612, including deposition fees and attorney's fees for one of the defendants. Thus the total deposition cost for the remaining 118 depositions, excluding any attorney's fees incurred by the plaintiffs in the taking of the deposition, is $72,216.
The court finds that plaintiff Frank Usowski has violated the discovery orders of this court and has engaged in continuous discovery abuse. The plaintiff, Frank Usowski, is ordered to pay for the remaining 118 depositions to be taken by the defendants. The plaintiff, Frank Usowski, is hereby ordered to deposit with the Clerk of the Superior Court, J.D. of Stamford-Norwalk within two weeks the sum $72,216.00. Against this sum the defendants may seek a draw after the taking of each deposition for the purpose of taking the depositions of all 118 individuals identified in the plaintiff's September 8, 1999 Compliance with Interrogatories. No money can be drawn down without further written order of this court. The CT Page 6746 court will retain continuing jurisdiction over the disposition of all funds deposited with the clerk of the court.
The court now considers the sanctions for this discovery violation as against the plaintiff, Douglas Staley. Practice Book § 13-14(b)(5) provides: "Such orders may include the following . . . (5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal." This court finds that the actions of Mr. Staley in failing to comply with the discovery are further compounded by filings that Mr. Staley has made in another action in the Superior Court. He was a party in a marital dissolution action pending in the Superior Court, Judicial District of Stamford-Norwalk. In this instant lawsuit, he claims that he was a partner and a part owner in Pet Pantry Super Discount Stores, LLC and Pet Pantry Warehouse, a general partnership, both located at 291 Railroad Avenue, Greenwich, CT. He is claiming that Mr. Usowski is a 24.5% partner, Mr. Staley is a 24.5% partner, and Mr. Jacobson is a 51% partner. Mr. Staley also alleges that there were capital contributions that were made by Mr. Staley from February, 1995 through and including the filing of this instant lawsuit on June 25, 1998. Therefore, this lawsuit claims that at all times from February 1995 to the June 25, 1998, Douglas Staley was a partner and owner in the business known as Pet Pantry.
The marital dissolution action was brought by Stephanie Staley returnable June 18, 1996 docket number FA96-0152759S. This court has reviewed the file and has taken judicial notice of its contents. The defendant, Douglas Staley, filed a financial affidavit with the Superior Court on March 19, 1997. He was placed under oath by the court and questioned on the record. His March 19, 1997 financial affidavit lists as assets real property located in Stamford, shares of stock in Pitney Bowes, a drum set worth $400 and a television worth $400. No other assets were listed. He listed his employer as Pet Pantry Warehouse and his wages as $576.97 per week, gross. On March 19, 1997 Douglas Staley was placed under oath and asked the following questions in court by his wife's attorney, "Are there any other assets that you need to list on here?" The plaintiff answered, "No". Whereupon the court granted a decree dissolving the marriage. His wife waived alimony. He received title to the real property and transferred the stock in Pitney Bowes to his wife. In addition he paid his wife $5,000 lump sum. The parties agreed to this property disposition based on Douglas Staley's March 19, 1997 financial affidavit and his statement under oath. Douglas Staley has not filed any motion to open the dissolution judgment. He has not filed any documents with the dissolution court correcting his false testimony. He has not filed a corrected financial affidavit.
In Staley v. Staley, Mr. Staley failed to include any claimed ownership CT Page 6747 interest in Pet Pantry in his sworn financial affidavit. He obtained the benefit of a dissolution of marriage, waiver of alimony and a division of real property. Neither the trial court in the dissolution, nor his wife, was aware of any claimed Pet Pantry ownership interest. That fact was pointed out to Mr. Staley in open court in this action by this very judge many months ago. To this court's knowledge no effort has been made by Douglas Staley to reopen the dissolution of marriage case or to otherwise notify the court or his ex-wife of the fact of his ownership/partnership claim. A searching, full and complete disclosure in dissolution of marriage actions, especially as to existence and valuation of assets, is crucial to the integrity of the court process. Monroe v. Monroe,177 Conn. 173, 183 (1979). The filing of an inaccurate financial affidavit as well as failure to disclose the true state of the party's financial status is violation of public policy and grounds to set the court decree aside. Baker v. Baker, 187 Conn. 315, 322-23 (1982). "The trial court in a dissolution of marriage action sits as a court of law and equity and it is incumbent upon the parties to disclose fully to the court all relevant information." Id. 323. The financial affidavit was submitted under penalty of false statement and if the allegations of this case are true, then the financial affidavit was false.
A trial court has the general authority to apply the legal principle of judicial estoppel when a litigant takes a different factual position in one case than he did in another case. This doctrine was implicitly recognized in SKW Real Estate Limited Partnership v. Mitsubishi MotorSales of America, Inc., 56 Conn. App. 1, 8 (1999). SKW cites the leading case on judicial estoppel in footnote 6. "First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some matter." Bates v. Long Island R.R. Co.,997 F.2d 1028, [997 F.2d 1028], 1038 (2d Cir.), cert. denied, 510 U.S. 992,114 S.Ct. 550, 126 L.Ed. 2nd [126 L.Ed.2d], 452 (1993).
Although not citing the theory of judicial estoppel, in a dissolution case, the plaintiff husband had falsely testified under oath that he had transferred property to his son in satisfaction of certain financial and other obligations. This was found to be fraud. The trial court found the transfer to be without consideration. The husband then sued his son requesting the reconveyance pursuant to the agreement between the two of them at the time of the predissolution transfer. The issue of the plaintiff husband's false testimony in the dissolution was raised. The court applied the doctrine of clean hands and refused to order either a reconveyance or a constructive trust. "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands . . . The clean hands doctrine is applied not for the CT Page 6748 protection of the parties but for the protection of the court." Pappas v.Pappas, 164 Conn. 242, 245-46 (1973). "Thus, where the granting of relief would amount to a condonation of perjury, the court should deny relief to protect its own integrity." Id. 246.
This reasoning has been adopted by two trial court decisions in Connecticut: Krauss v. Aetna Life and Casualty Co., Superior Court, judicial district of New Haven at Meriden, Docket No. CV 90-236432, August 24, 1994. Stanley, J.), 1994 Ct. Sup. 8587 and Chinnici v.Breakwater Key, Inc., Superior Court judicial district of Fairfield at Bridgeport, Docket No. CV 92-0295110 S (May 24, 1996, West, J.)1996 Ct. Sup. 4332-III.
 The doctrine of judicial estoppel prevents a party from taking inconsistent positions in subsequent legal proceedings. In re Galeria des Monnaies of Geneva, Ltd. 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985), aff'd 62 B.R. 224 (S.D.N.Y. 1986). The object is to safeguard the administration of justice by preventing litigants from playing `fast and loose' with the courts. Id. at 260 . . ." Reciprocal Merchandising v. All Advertising Assoc., 163 B.R. 689, 696 (S.D.N.Y. 1994).
 The moving party asserting judicial estoppel must show (1) an unequivocal assertion of law or fact by a party in one judicial proceeding, (2) the assertion by that party of an intentionally inconsistent position of law or fact in a subsequent proceeding, (3) in order to mislead the court and obtain unfair advantage as against another party. In re Cohen, 131 B.R. 19
(Bank.E.D.Pa. 1991).
 Judicial estoppel serves to safeguard the proper administration of justice and preserves the public confidence in the purity and efficiency of judicial proceedings. Melton v. Anderson, 32 Tenn. App. 335, 222 S.W.2d 666, 669 (Tenn.Ct.App. 1948). In the view of this court, such policy concerns are very significant, and the courts must be vigilant to preserve the overall integrity of the system. We cannot allow litigants to expect we will play host to duplicitous assertions at any point in the proceedings. This court would not hesitate to seize the opportunity to prevent a party from deliberately misleading the court in one judicial proceeding, and CT Page 6749 thereafter reverse his position in a subsequent proceeding. It is inimical to the fundamentals of justice and an affront to the honesty upon which our judicial process is based. (Internal quotation marks omitted.) Krauss v. Aetna Life and Casualty Co., supra, Superior Court, Docket No. CV 90 236432.
This court is also familiar with the recently reported case of State ofConnecticut v. Robert W. McNamara. Mr. McNamara recently pled guilty to criminal contempt of court admitting that he lied during his divorce proceedings about what he did with $150,000, the proceeds of a family house in Redding. He was originally arrested for perjury and criminal contempt of court. At an earlier hearing Mr. McNamara testified that he no longer had the $150,000 since he spent $20,000 for a computer and mobile home and gambled away the rest. In fact he had it on deposit and used it to purchase 130 acres of land in New York that he placed in a trust, "Court officials said it is the first time in at least 20 years that someone has been charged for disobeying a court order issued during a divorce hearing." November 15, 1999 issue of the Connecticut Post.
The public policy of the State of Connecticut as noted in Monore v.Monroe, the requirement of candor by all participants in a court proceeding and the false statement statutes are further justification for the dismissal of the complaint of the plaintiff, Douglas Staley.
As to Douglas Staley, the Motion for Sanctions is granted, and the court pursuant to Practice Book Section 13-14(b)(5) hereby enters a judgment of dismissal of all counts of Douglas Staley's lawsuit as amended on March 17, 2000. as against the defendants, Barry Jacobson, Pet Pantry Super Discounts Stores, LLC and Pet Pantry Warehouse, a general partnership.
BY THE COURT.
KEVIN TIERNEY, J.