DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE *v.* MANUEL J. PEREZ ET AL.
(AC 34773)

Lavine, Robinson and Schaller, Js.

Argued September 19—officially released December 3, 2013

improper. There is no basis for this argument in *Santiago*, which involved the conduct of a lone prosecutor.

*Christopher G. Brown,* for the appellants (named defendant et al.).

*Gerald L. Garlick,* with whom was *Katherine E. Abel,* for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants in this residential mortgage foreclosure action, Manuel J. Perez and his wife, Janet W. Shaw,[1] appeal from the trial court's reformation of the subject mortgage and from the judgment of strict foreclosure subsequently rendered on the reformed mortgage in favor of the plaintiff, Deutsche Bank National Trust Company, as trustee for HarborView Mortgage Loan Trust mortgage loan pass-through certificates, series 2006-7.[2] The defendants claim that the court abused its discretion by reforming the mortgage on the basis of a mutual mistake to include Shaw as a mortgagor, thus implicating her undivided one-half interest in the mortgaged property, despite the fact that Shaw was not a signatory to the mortgage and never had agreed to mortgage her interest in the subject property, and by foreclosing upon the improperly reformed mortgage. We conclude that the court lacked the authority to reform the mortgage as it did, and, therefore, we reverse in part the judgment of the trial court.

The following facts, which either are undisputed in the record or were found by the trial court in its memorandum of decision, and procedural history are relevant

[1] In addition to Perez and Shaw, National City Bank was also a defendant in the foreclosure action by virtue of a mortgage interest it held that allegedly was subsequent in right to the plaintiff's mortgage. National City Bank was defaulted by the trial court for failing to file an appearance, and it is not a participant in the present appeal. Accordingly, we will refer in this opinion to Perez and Shaw collectively as the defendants.

[2] The mortgage note originally was executed in favor of American Brokers Conduit (ABC), and the mortgage originally was executed in favor of Mortgage Electronic Registration Systems, Inc., as nominee for ABC. The mortgage and note were later assigned to the plaintiff.

to our resolution of this appeal. In June, 2009, the plaintiff commenced this action against the defendants regarding property they jointly owned in the Rowayton section of Norwalk. In count one of the two count complaint, the plaintiff sought reformation of a $1,575,000 mortgage that Perez had executed on May 11, 2006. The plaintiff alleged that Shaw's name had been omitted from the mortgage by mutual mistake of the parties when it was executed. The plaintiff also alleged that Shaw's name should have been included on the mortgage instrument as a mortgagor, because, at the time Perez executed the mortgage, he and Shaw co-owned the subject property as joint tenants pursuant to a November 4, 2005 quitclaim deed,[3] and the parties to the mortgage had intended that the mortgage convey a 100 percent security interest in the subject property. Count two sought to foreclose the mortgage as reformed because the defendants were in default for failure to make payments in accordance with the note.

On July 10, 2009, the plaintiff filed a motion for judgment of strict foreclosure. On April 7, 2010, the defendants filed their answer, special defenses alleging that the subject mortgage was invalid, and a counterclaim seeking to quiet title.[4] On August 25, 2011, the plaintiff successfully moved to bifurcate the proceedings, in that the court agreed first to consider whether the mortgage was valid and should be reformed to add Shaw as an additional mortgagor before turning to any remaining foreclosure issues.

The plaintiff argued at trial that the parties had made a mutual mistake with respect to the mortgage, because ABC, the original mortgagee; see footnote 2 of this opinion; intended to obtain a complete security interest in the subject property by receiving a mortgage from

---

[3] The deed was recorded on the land records on January 17, 2006.

[4] The counterclaim was withdrawn prior to trial.

all parties holding an ownership interest in the subject property, and that Perez had intended to give ABC whatever was necessary to secure the loan from ABC. The defendants, however, argued that Shaw was not a party to the loan application or to the mortgage, nor did she know about the loan from ABC to Perez. Shaw was aware of Perez' conveyance to her and of her resulting interest in the subject property; however, she had not seen the actual quitclaim deed transferring the subject property to herself and Perez as joint tenants until two weeks prior to trial.

At the conclusion of the trial, the plaintiff filed a motion to amend its complaint to conform to the evidence, seeking to allege that the November 4, 2005 deed quitclaiming the subject property to Perez and Shaw as joint tenants was never delivered to Shaw or that Shaw never accepted the deed and, thus, that title to the property was wholly vested in Perez. The defendants objected to the motion to amend, arguing that the motion was procedurally improper and factually incorrect.

On May 17, 2012, the court filed a memorandum of decision in which it determined that the plaintiff and Perez had made a mutual mistake in executing the May 11, 2006 mortgage in that they both intended "that the [plaintiff] have a valid security interest in the property" and therefore Shaw should have been required to sign the mortgage so that Shaw's interest in the subject property was included in the security. The court ordered that the mortgage be reformed by adding Shaw's name as a mortgagor and including therein her interest in the subject property as if she had joined in the execution of the mortgage ab initio. The court further ordered that, in light of its ruling, there was no need to adjudicate the plaintiff's motion to amend its complaint to conform to the evidence regarding whether title had in fact remained solely in the name of Perez.

On June 5, 2012, the court granted the plaintiff's motion for judgment of strict foreclosure. This appeal followed.

We begin by setting forth some general principles of law that will guide us in our review of the defendants' claims. "Reformation and foreclosure are both equitable proceedings." *Derby Savings Bank* v. *Oliwa*, 49 Conn. App. 602, 604, 714 A.2d 1278 (1998). "We will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Croall* v. *Kohler*, 106 Conn. App. 788, 791–92, 943 A.2d 1112 (2008).

"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result

of mutual mistake. . . . The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result which neither intended." (Citations omitted; internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 531–32, 441 A.2d 151 (1981); see also 1 Restatement (Second) of Contracts § 155 (1981) ("[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effects of the writing, the court may at the request of a party reform the writing to express the agreement *except to the extent that rights of third parties . . . will be unfairly affected*" [emphasis added]).

"[T]here can be no reformation unless there is an antecedent agreement upon which the minds of the parties have met. The relief afforded in reforming an instrument is to make it conform to the previous agreement of the parties. Therefore a definite agreement on which the minds of the parties have met must have pre-existed the instrument in question. The court cannot supply an agreement which was never made, for it is its province to enforce contracts, not to make or alter them." *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 443, 6 A.2d 357 (1939); see also 7 J. Perillo, Corbin on Contracts, Avoidance and Reformation (Rev. Ed. 2002) § 28.45, pp. 281–82 ("Note the limited scope for reformation. Contracts are not reformed for mistake; writings are. The distinction is crucial." [Footnote omitted.]).

"A court in the exercise of its power to reform a contract must act with the utmost caution and can only

grant the relief requested if the prayer for reformation is supported by convincing evidence. . . . *In the absence of fraud, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt.* . . . If the right to reformation is grounded solely on mistake, it is required that the mistake be mutual, and to prevail in such a case, it must appear that the writing, as reformed, will express what was understood and agreed to by both parties." (Citations omitted; emphasis added.) *Greenwich Contracting Co.* v. *Bonwit Construction Co.*, 156 Conn. 123, 126–27, 239 A.2d 519 (1968). A party seeking the reformation of a contract must show proof justifying reformation by "clear, substantial and convincing evidence," meaning evidence that "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, [and] that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, supra, 185 Conn. 534. With those principles in mind we turn to the defendants' claims.

On appeal, the defendants claim that the court abused its discretion by reforming the mortgage to include Shaw as a mortgagor, thereby including her undivided one-half interest in the mortgaged property as security for the note. The defendants argue that because Shaw was not an intended signatory to the mortgage and, more importantly, never had agreed to mortgage her interest in the subject property, the court lacked the authority to reform the mortgage as it did. Because our review of the record reveals the absence of clear, substantial and convincing evidence that Shaw participated in Perez' efforts to obtain the loan or execute the mortgage currently at issue, and the court made no findings of fraud or improper motives on the part of

either Perez or Shaw, we conclude that the court abused its discretion in reforming the mortgage to add Shaw as a party because, in so doing, the court created an entirely new contract, which it lacked the authority to do.

The following additional facts are pertinent to our review of the court's adjudication of the reformation count. The purpose of the mortgage loan was to finance the cost of care and treatment for Perez' teenaged son, who was suffering from a serious drug addiction. Shaw was not the son's mother, and Perez did not want to involve her in his personal problems. At the time he executed the subject mortgage, Perez' mind was preoccupied, and he was in a state of confusion and failed to realize that Shaw's signature was required on the mortgage. As a result of this mental state, he "completed all of the essential steps without giving any thought to how title to the property stood and the need for his wife's signature."

Shaw was not present at the closing. She did not sign the loan application, and there is no evidence that she communicated with the lender ABC or participated in any way in securing the loan. All documents were prepared at the instigation of the lender, although it cannot be determined by whom they actually were drafted. Neither Perez nor the lender were represented by counsel at the closing, which was conducted by a closing agent. A title insurance commitment that was part of the closing documents received by the closing agent specified that a mortgage should be obtained from both Perez and Shaw. Nevertheless, "the mortgage was prepared by or for the lender for Perez' signature only and the instructions to the closing agent erroneously reflected that Perez was the sole applicant and borrower." The instructions specified that "all nonborrowing title holders must sign signature page of

mortgage" and contained language authorizing the closing agent to add any missing names as necessary. That, however, was not done. There is no evidence explaining the lack of conformity between the mortgage, the title commitment and the actions of the closing agent. Shaw was never asked to sign the mortgage; it was executed as prepared with only Perez' signature.

In exercising its equitable power of reformation, a court is limited to correcting mistakes in a written instrument so that the writing conforms with the true agreement and intent that existed between the actual parties to that agreement. The court generally "does not have the power to add a party to a contract or [to] substitute parties to a contract." 66 Am. Jur. 2d 297, Reformation of Instruments § 51 (2011). This is because someone who was not involved in the formation of an agreement could not have reached a "meeting of the minds" that would conflict with the writing memorializing the intended agreement, and, therefore, there could not be any mistake amenable to reformation. See *Hoffman* v. *Fidelity & Casualty Co.*, supra, 125 Conn. 443.

In the present case, the plaintiff sought to reform the mortgage not to correct an errant description of the subject property—a common reason to reform a mortgage or deed—or some other technical defect in the memorialization of the transaction between ABC and Perez, but rather to bind Shaw and her interests to the terms of the mortgage. To do so would have required presentation of clear, substantial and convincing evidence that Shaw in fact was a party to the mortgage transaction and intended to be a signatory to the mortgage.[5] For example, there needed to be some evidence

---

[5] As the defendants argue, Perez lacked the authority as a cotenant unilaterally to mortgage Shaw's interest in the subject property; see *Ianotti* v. *Ciccio*, 219 Conn. 36, 41, 591 A.2d 797 (1991); and therefore the court's focus on whether ABC and Perez intended that Shaw be bound by their mortgage agreement was too limited an inquiry.

that she had signed the loan application or was present and participated in the execution of the mortgage, or that there were blank signature lines on the prepared mortgage documents bearing her name. Such evidence might have been sufficient to support a finding that she actually was a party to the mortgage who, by mutual mistake, simply failed to execute the intended mortgage. There was no such evidence before the court in the present case; in fact, the evidence and findings of the court strongly suggested that Shaw was not involved in this particular mortgage transaction. Without clear, substantial and convincing evidence to support the court's decision to reform the mortgage, the reformation cannot stand. The court exceeded its equitable authority in reforming the mortgage on the basis of the record before it. Further, because the court foreclosed on what we have determined is an erroneously reformed mortgage, we necessarily must also reverse in part the court's judgment of strict foreclosure.[6]

---

[6] The plaintiff argues as an alternate ground for affirming the court's judgment that there was no delivery and acceptance of the quitclaim deed from Perez to Shaw and, thus, that the mortgage executed solely by Perez conveyed a valid and complete security interest in the subject property absent reformation of the mortgage. "The delivery of the deed to, and its acceptance by, the grantee are essentials of every valid conveyance of real estate. . . . Delivery is a matter of intention proved by act or word. Similarly, proof of acceptance may be by any act or expression which shows an intention on the part of the grantee to assent or consent to the grant." (Citation omitted.) *Wiley* v. *London & Lancashire Fire Ins. Co.*, 89 Conn. 35, 39, 92 A. 678 (1914). The plaintiff made this alternative argument in its posttrial motion for leave to amend the complaint to conform to the evidence, which motion the court stated there was "no need to adjudicate" in light of its decision to reform the mortgage to include Shaw's one-half interest in the subject property. The plaintiff filed a motion for articulation asking the court, inter alia, to articulate whether it had determined "if [Shaw] accepted the deed that purported to convey title to the subject property from [Perez] to [Perez] and [Shaw]." The court denied the motion for articulation without comment and, upon review, this court denied the plaintiff's request that we order the court to articulate. Whether a deed has been delivered and accepted presents questions of fact for the trier. See *Kimball* v. *Hutchins*, 3 Conn. 450, 452 (1820); *McCook* v. *Coutu*, 31 Conn. App. 696, 701, 626 A.2d 1321, cert. denied, 227 Conn. 911, 632 A.2d 692 (1993). In the present case,

The judgment is reversed in part and the case is remanded with direction to render judgment in favor of the defendants on the reformation count, and in favor of Shaw on the foreclosure count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

it is implicit within the court's express factual findings—that Shaw had an ownership interest in the property, that she was aware of the conveyance from Perez, that she had executed another mortgage with Perez and that the conveyance from Perez properly was recorded on the land records—that the court necessarily found that there had been proper delivery and acceptance of the deed from Perez to Shaw. The plaintiff has provided no basis for us to conclude that the court's findings, implicit or otherwise, were clearly erroneous, and, accordingly, we find no merit in the plaintiff's alternate ground for affirmance.