******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THE BANK OF NEW YORK MELLON,
TRUSTEE *v.* RUSSELL M.
MADISON ET AL.
(AC 43719)

Alvord, Prescott and Moll, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property
in Woodbridge owned by the defendants R and M. Following several
antecedent assignments, the mortgage was assigned to the plaintiff on
the Woodbridge land records, and, subsequently, R defaulted on the
note which was secured by the mortgage. The plaintiff provided R and
M with written notice of the default, which was not cured, and thereafter
commenced this action. The plaintiff appended to its original complaint
a copy of the schedule affixed to the mortgage containing a description
of the property. The plaintiff subsequently filed an amended two count
complaint, alleging, in count one, a claim for foreclosure and appending
an amended schedule that described an additional parcel of land that
abutted the previously identified parcel. The plaintiff asserted in count
two a claim for reformation of the mortgage, which alleged that the
property description in the schedule appended to the plaintiff's original
complaint was inaccurate, and that the amended schedule set forth the
correct description of the property. The court thereafter granted the
plaintiff's motion for summary judgment as to liability on its foreclosure
claim. Following a hearing, the court granted the plaintiff's motion for
judgment of strict foreclosure and, immediately thereafter, the plaintiff's
counsel orally moved for judgment on the reformation claim. The court
reserved decision on the plaintiff's oral motion for judgment at the
hearing, but subsequently granted the motion. From the judgment ren-
dered thereon, R and M appealed to this court. *Held:*
1. The trial court improperly granted the plaintiff's oral motion for judgment
on its reformation claim: the plaintiff failed to produce any evidence in
support of its reformation claim, R and M were not defaulted as to
the plaintiff's amended complaint, and the plaintiff never moved for
summary judgment on its reformation claim; accordingly, there was no
basis on which the court could have properly rendered judgment in the
plaintiff's favor; moreover, this court concluded that, as a result of its
reversal of the judgment with respect to the reformation of the mortgage,
the judgment of strict foreclosure must also be reversed, because a trial
court must adjudicate a reformation claim before or in conjunction with
the attendant foreclosure claim.
2. The trial court properly granted the plaintiff's motion for summary judg-
ment as to liability on its foreclosure claim: contrary to R and M's claim
that the plaintiff failed to establish that the default notice that it had
mailed to R and M complied with the notice requirements of the mort-
gage, this court concluded that the notice substantially complied with
those requirements, insofar as that notice was required to specify a
date, not less than thirty days from the date the notice is given to the
borrower, by which the default must be cured, as the language of the
notice was sufficiently clear and unambiguous so as to alert R and M
that the plaintiff was demanding that they cure the default within thirty
days of February 22, 2016, the notice in the present case was dated
February 22, 2016, included several references to that date, and, read
as a whole, sufficiently notified R and M that they had to cure their
default within thirty days of February 22, 2016.

Argued October 21, 2020—officially released March 2, 2021

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty owned by the named defendant et al., and for other
relief, brought to the Superior Court in the judicial dis-
trict of New Haven, where the plaintiff filed an amended

complaint; thereafter, the court, *Baio, J.*, granted the plaintiff's motion for summary judgment as to liability; subsequently, the court, *Baio, J.*, rendered judgment of strict foreclosure; thereafter, the court granted the plaintiff's motion for judgment on count two of the complaint seeking reformation of the mortgage and rendered judgment thereon, from which the named defendant et al. appealed to this court. *Reversed in part; further proceedings*.

*Earle Giovanniello*, for the appellants (named defendant et al.).

*Christopher J. Picard*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this foreclosure action, the defendants Russell M. Madison and Margit Madison[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, The Bank of New York Mellon, Trustee,[2] on its amended two count complaint asserting claims for foreclosure and reformation of the mortgage. On appeal, the defendants claim that the court improperly granted (1) the plaintiff's oral motion for judgment on its reformation claim when the plaintiff failed to produce any evidence in support thereof and (2) the plaintiff's motion for summary judgment as to liability only on its foreclosure claim when the plaintiff failed to establish that the default notice that it had mailed to the defendants complied with the notice requirements of the mortgage. We reverse in part the judgment of the trial court.[3]

The following facts and procedural history are relevant to our resolution of this appeal. In May, 2017, the plaintiff commenced this foreclosure action. The plaintiff's original complaint set forth a single count alleging the following relevant facts. On or about February 25, 2005, Russell executed a promissory note, in the principal amount of $473,400, in favor of Mortgage Capital Group, LLC. The loan was subsequently subjected to several loan modification agreements. To secure the note, the defendants executed a mortgage on certain real property located at 140 Seymour Road in Woodbridge. Appended to the original complaint was a copy of the schedule affixed to the mortgage containing a description of the property encumbered by the mortgage (original schedule). On March 2, 2005, the mortgage was recorded on the Woodbridge land records. Following several antecedent assignments, the mortgage was assigned to the plaintiff by virtue of an assignment recorded on the Woodbridge land records on October 26, 2011, and the plaintiff became the holder of the note. On an unspecified date, Russell defaulted on the note. Thereafter, the plaintiff provided the defendants with written notice of the default, which was not cured. As a result, the plaintiff elected to accelerate the balance due on the note, declare the note to be due in full, and commence this action seeking to foreclose on the mortgage.

On October 19, 2018, the plaintiff filed a request for leave to file an amended complaint.[4] Attached to the request was a proposed two count amended complaint, which was deemed to have been filed by consent, without objection. Appended to the amended complaint was an amended schedule describing the property encumbered by the mortgage (amended schedule). The amended schedule was otherwise identical to the original schedule, except that the amended schedule described an additional parcel of land that abutted the previously identified parcel. Count one of the amended

complaint asserted a claim for foreclosure (count one) and mirrored the allegations set forth in the plaintiff's original complaint, except that count one alleged that the *amended* schedule described the property secured by the mortgage, whereas the original complaint alleged that the *original* schedule described the encumbered property. The newly added count two of the amended complaint asserted a claim for reformation of the mortgage (count two). In support of count two, the plaintiff alleged in relevant part that, following a title search completed in relation to the plaintiff's foreclosure claim, it was discovered that the property description affixed to the mortgage (as reflected in the original schedule) was inaccurate, and that the amended schedule set forth the correct description of the property encumbered by the mortgage.

On November 14, 2018, the defendants answered the amended complaint. As to count one, the defendants admitted, inter alia, that they owned and were in possession of the property as described in the amended schedule, but they left the plaintiff to its proof regarding its allegations that, inter alia, the plaintiff was the holder of the note, the note was in default, the plaintiff had properly notified them of the default, and the default had not been cured. As to count two, other than restating their admission that they owned the property as described in the amended schedule, the defendants either denied the plaintiff's allegations or left the plaintiff to its proof. The defendants did not plead any special defenses. On November 21, 2018, the plaintiff filed a demand for disclosure of a defense. On November 30, 2018, the defendants filed a disclosure of defense demanding that the plaintiff produce the "original mortgage note" and provide proof that it had a legal right to foreclosure, produce evidence that the assignment of the mortgage to the plaintiff was validly executed, and produce evidence that it had sent a proper default notice to them.

On June 17, 2019, the plaintiff filed a motion, accompanied by a supporting memorandum of law and exhibits, seeking summary judgment as to liability only with respect to count one. The plaintiff claimed that it had established a prima facie case for foreclosure because there was no genuine issue of material fact that (1) it was the holder of the note, (2) a default had occurred, (3) in accordance with the terms of the mortgage, it had mailed a default notice to the defendants, and (4) the default had not been cured. Notably, the plaintiff did not move for summary judgment as to count two or mention the reformation count in its motion. On July 30, 2019, the defendants filed an objection, principally arguing that the default notice mailed to them by the plaintiff did not comply with the notice provisions of the mortgage.

On October 8, 2019, after having heard argument on

September 23, 2019, the trial court, *Baio, J.*, issued an order granting the plaintiff's motion for summary judgment as to liability only on count one and overruling the defendants' objection. None of the parties nor the court referred to count two or reformation during argument on September 23, 2019, and the court's order granting the motion for summary judgment did not mention count two.

On December 2, 2019, the court held a hearing on a motion for judgment of strict foreclosure that the plaintiff had filed on November 9, 2018. On the record, over the defendants' objection, the court granted the plaintiff's motion and rendered a judgment of strict foreclosure as to count one. Immediately thereafter, the plaintiff orally requested that the court also render judgment in its favor on count two. The defendants objected on the ground that the plaintiff's motion for summary judgment, which was granted by the court on October 8, 2019, did not encompass count two.

After passing the matter to allow the parties an opportunity to review the relevant materials in the record, the court allowed brief argument. The defendants argued that the plaintiff failed to submit evidence in support of its reformation claim, and, therefore, they requested that the court reserve its ruling on the plaintiff's oral motion for judgment as to count two until the plaintiff had met its evidentiary burden. The plaintiff argued that its motion for summary judgment was "generic enough to ask for liability as to the entire [amended] complaint," and that it interpreted the court's granting of the motion for summary judgment as encompassing both counts of the amended complaint. In addition, after conceding that its November 9, 2018 motion for judgment of strict foreclosure was limited to count one, the plaintiff orally moved for judgment with respect to count two. The court reiterated that it had rendered a judgment of strict foreclosure as to count one before stating that it was reserving its decision on the plaintiff's oral motion for judgment on count two.

On December 6, 2019, the court summarily granted the plaintiff's oral motion for judgment as to count two. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendants' claim that the trial court improperly granted the plaintiff's oral motion for judgment on count two. The defendants assert that the court had no ground on which to render judgment in the plaintiff's favor on count two because the plaintiff had failed to produce any evidence demonstrating that reformation of the mortgage was justified. We agree.

We begin by observing that "[r]eformation and foreclosure are both equitable proceedings. . . . We will

reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result of mutual mistake. . . . The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result which neither intended. . . .

"[T]here can be no reformation unless there is an antecedent agreement upon which the minds of the parties have met. The relief afforded in reforming an instrument is to make it conform to the previous agreement of the parties. Therefore a definite agreement on which the minds of the parties have met must have pre-existed the instrument in question. The court cannot supply an agreement which was never made, for it is its province to enforce contracts, not to make or alter them. . . .

"*A court in the exercise of its power to reform a contract must act with the utmost caution and can only grant the relief requested if the prayer for reformation is supported by convincing evidence.* . . . In the absence of fraud, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt . . . . If the right to reformation is grounded solely on mistake, it

is required that the mistake be mutual, and to prevail in such a case, it must appear that the writing, as reformed, will express what was understood and agreed to by both parties. . . . *A party seeking the reformation of a contract must show proof justifying reformation by clear, substantial and convincing evidence,* meaning evidence that induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, [and] that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Perez,* 146 Conn. App. 833, 838–40, 80 A.3d 910 (2013), appeal dismissed, 315 Conn. 542, 109 A.3d 452 (2015).

The record reveals that the court granted the plaintiff's oral motion for judgment on count two, notwithstanding the fact that the plaintiff failed to "show proof justifying reformation by clear, substantial and convincing evidence . . . ." (Internal quotation marks omitted.) Id., 840. The defendants were not defaulted as to the plaintiff's amended complaint; indeed, as to count two, other than admitting that they owned the property as described in the amended schedule, they either denied the plaintiff's allegations or left the plaintiff to its proof. The plaintiff never moved for summary judgment on count two.[5] At no point did the plaintiff produce any evidence before the trial court in support of its reformation claim. Put simply, there was no basis on which the court could have properly rendered judgment in the plaintiff's favor on its reformation claim.[6] Therefore, we conclude that the court committed error in granting the plaintiff's oral motion for judgment on count two.

At this juncture, we must address whether the foreclosure judgment rendered on count one is directly affected by our conclusion that the court improperly rendered judgment in the plaintiff's favor on count two, reforming the mortgage. We conclude that reversing the judgment rendered on count two necessitates reversing the foreclosure judgment rendered on count one.

When pursued together in the same action, a foreclosure claim is oftentimes inextricably intertwined with a reformation claim, such that the foreclosure claim is untenable if the reformation claim fails. See *JPMorgan Chase Bank, National Assn.* v. *Virgulak,* 192 Conn. App. 688, 705, 218 A.3d 596 (concluding that trial court did not err in denying foreclosure claim when mortgage, as executed, was nullity because it purported to secure nonexistent debt and reformation of mortgage, as trial court properly determined, was not warranted), cert. granted, 333 Conn. 945, 219 A.3d 375 (2019); *Deutsche Bank National Trust Co.* v. *Perez,* supra, 146 Conn. App. 843 (concluding that reversal of portion of judgment reforming mortgage "necessarily" required reversal of

foreclosure judgment predicated on erroneously reformed mortgage); *Century Mortgage Co.* v. *George,* 35 Conn. App. 326, 331, 646 A.2d 226 (concluding that trial court did not err in denying foreclosure claim when property description affixed to mortgage referred to property in different municipality and trial court had concluded that reformation of mortgage was not warranted), cert. denied, 231 Conn. 915, 648 A.2d 150 (1994).

In the present case, the plaintiff's foreclosure claim was not necessarily dependent on its particular reformation claim, which sought to capture an abutting parcel; that is, failure of the reformation claim would not preclude the plaintiff from pursuing a foreclosure on the mortgage, as executed, against the defendants with respect to 140 Seymour Road in Woodbridge. Nevertheless, we conclude that under the circumstances of the present case, where a mortgagee is seeking simultaneously to foreclose on and to reform a mortgage, a foreclosure judgment cannot be rendered, or, if already rendered, cannot stand if the reformation claim remains pending. In other words, under such circumstances, a trial court must adjudicate the reformation claim before or in conjunction with the attendant foreclosure claim. This rule recognizes the interrelation between foreclosure and reformation claims and promotes judicial economy by removing any potential need to open an existing foreclosure judgment to account for a subsequent reformation of the mortgage. Moreover, it is simply more prudent to resolve any ambiguity clouding a mortgage before foreclosing on it. Accordingly, as a result of our reversal of the judgment rendered on count two reforming the mortgage, the judgment of strict foreclosure rendered on count one must be reversed.[7]

## II

We next turn to the defendants' claim that the trial court improperly granted the plaintiff's motion for summary judgment as to liability only on count one. We disagree.

"The legal principles and standard of review governing our resolution of this claim are well settled. On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion

for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 849–50, 231 A.3d 182 (2020). "When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) Id., 850–51.

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Internal quotation marks omitted.) Id., 850.

The following additional facts are relevant to our disposition of this claim. In its memorandum of law in support of its motion for summary judgment, the plaintiff asserted that it had demonstrated a prima facie case for foreclosure because, inter alia, there was no genuine issue of material fact that it had mailed a default notice to the defendants in compliance with the notice provisions of the mortgage.

Appended to the plaintiff's supporting memorandum of law was a copy of the mortgage. Paragraph 22 of the mortgage provides in relevant part: "Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) *a date, not less than 30 days from the date the notice is given to Borrower,*

*by which the default must be cured*; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law." (Emphasis added.)

Additionally, appended to the plaintiff's supporting memorandum of law was an affidavit of Mhari Holtzclaw, an employee of a company doing business as Shellpoint Mortgage Servicing, the plaintiff's loan servicer. Holtzclaw averred in relevant part that "[t]he [p]laintiff provided written notice of default by letter dated February 22, 2016, and sent to the [d]efendants on or about that date. A true and accurate copy of the notice is attached hereto . . . ." The attached default notice was titled "Notice of Default and Intent to Accelerate" (notice). The first page of the notice was dated "02/22/2016." The notice provides in relevant part: "The loan associated with the . . . Deed of Trust/Mortgage [referenced earlier in the notice] is in default for failure to pay amounts due. To cure this default, you must pay all amounts due under the terms of the Note and Security Instrument. As of 02/22/2016, the total amount necessary to bring the Loan current is $14,173.83 (the 'Amount Due'). For the exact amount you must pay to bring the Loan current after 02/22/2016, please contact our office . . . as interest, payments, credits, fees and/or other permissible charges can continue to cause your loan balance to vary from day to day. . . . If you have not cured the default within Thirty Days (30) days of this notice, Shellpoint [Mortgage Servicing] intends to accelerate the sums evidenced by the Note and Security instruments and declare same due and payable in full and to take other legally and contractually permitted action to collect the same . . . . If such date falls on a Saturday, Sunday or legal holiday then the Due Date shall be the next business day. Any partial payment received by our office on the Loan after the date of this letter may not be applied to the reduction of the Amount Due and may be returned however any such acceptance does not waive the right to proceed with foreclosure and a new demand letter may not be sent."

In their objection, relying on *Fortune Savings Bank* v. *Thibodeau*, Superior Court, judicial district of New Haven, Docket No. CV-92-0330358 (November 17, 1992) (7 Conn. L. Rptr. 611), the defendants argued that the notice was defective because it did not specify the date by which the default had to be cured, as required by paragraph 22 of the mortgage. In granting the plaintiff's motion for summary judgment and overruling the defendants' objection, the court determined that *Thibodeau* was distinguishable because the notice in the present

case "[did] indeed contain a specific date as a clear reference point to provide clear notice to the defendants."

The defendants on appeal contend that, in contravention of paragraph 22 of the mortgage, the notice did not specify a date by which the default had to be cured. Accordingly, the defendants claim that the plaintiff did not demonstrate that it had mailed a proper default notice to them, and, therefore, the plaintiff was not entitled to summary judgment as to liability only on count one.[8] We are not persuaded.

"It is well established that [n]otices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. . . . In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended. . . .

"In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. . . . Ordinarily, such ambiguity requires the use of extrinsic evidence by a trial court to determine the intent of the parties, and, because such a determination is factual, it is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 858–59.

Our precedent instructs that the contents of a default notice need not adhere strictly to the notice requirements of a mortgage; rather, substantial compliance is sufficient. See *Saunders* v. *Stigers*, 62 Conn. App. 138, 146–47, 773 A.2d 971 (2001) (rejecting defendant's claim that trial court improperly granted, in part, plaintiffs' motion for summary judgment as to liability only when default notice "substantially complied" with notice provision in mortgage requiring default notice to specify action required to cure default and that failure to cure default within allotted time could result in foreclosure or sale of property); see also *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 713–15, 807 A.2d 968 (citing *Saun-*

*ders* in concluding that default notice "substantially complied" with notice provision in mortgage requiring default notice to specify that defendants had " 'right to assert in court the [nonexistence] of a default or any other defense of Borrower to acceleration and foreclosure or sale,' " and, thus, trial court properly rendered summary judgment as to liability only in plaintiff's favor), cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

Upon a careful review of the notice, we conclude that the notice substantially complied with paragraph 22 of the mortgage insofar as that provision requires the notice to specify "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." The notice is plainly dated February 22, 2016, and set forth the sum necessary to bring the mortgage loan current "[a]s of 02/22/2016 . . . ." The notice further provides in relevant part that if the default was not cured "*within Thirty Days (30) days of this notice*, Shellpoint [Mortgage Servicing] intend[ed] to accelerate the sums evidenced by the Note and Security instruments and declare same due and payable in full and to take other legally and contractually permitted action to collect the same . . . ." (Emphasis added.) Moreover, the notice provides that "[a]ny partial payment received by [Shellpoint Mortgage Servicing's] office on the Loan *after the date of this letter* may not be applied to the reduction of the Amount Due and may be returned however any such acceptance does not waive the right to proceed with foreclosure and a new demand letter may not be sent." (Emphasis added.) The language of the notice was sufficiently clear and unambiguous so as to alert the defendants that the plaintiff was demanding that they cure the default within thirty days of February 22, 2016.[9]

In *Federal Home Loan Mortgage Corp.* v. *Bardinelli*, 44 Conn. Supp. 85, 87–89, 667 A.2d 1315, aff'd, 39 Conn. App. 786, 667 A.2d 806 (1995), a foreclosure action, in granting the plaintiff's motion for summary judgment, the trial court concluded that a default notice providing that the defendant's default had to be cured "within thirty . . . days from the date of this letter," substantially complied with a provision in the mortgage requiring that a default notice "shall specify . . . a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." (Internal quotation marks omitted.) This language mirrors the relevant language in paragraph 22 of the mortgage in the present case. On appeal, this court adopted the trial court's memorandum of decision granting the plaintiff's motion for summary judgment and affirmed the judgment of foreclosure by sale that followed the trial court's rendering of summary judgment. *Federal Home Loan Mortgage Corp.* v. *Bardinelli*, 39 Conn. App. 786, 788, 667 A.2d 806 (1995). Like the mortgagee in *Bardinelli*, the plaintiff substantially complied with the relevant language in paragraph 22 of the mortgage,

despite having failed to set forth in explicit terms the date by which the default had to be cured.

The defendants cite *Thibodeau* in support of their argument that the notice was deficient. In *Thibodeau*, the parties executed a mortgage with a notice provision, like that of paragraph 22 of the mortgage in the present case, requiring that a default notice "shall specify . . . a date, not less than 30 days from the date the notice is given to Borrower; by which the default must be cured . . . ." (Emphasis omitted; internal quotation marks omitted.) *Fortune Savings Bank* v. *Thibodeau*, supra, 7 Conn. L. Rptr. 611. In purported compliance with the mortgage, the plaintiff in *Thibodeau* sent a default notice to the defendants providing in relevant part that "[t]his is your thirty . . . day notice to reinstate your loan . . . ." (Internal quotation marks omitted.) Id. Although the trial court in *Thibodeau* noted that the plaintiff had sent the default notice on December 9, 1991, there was no indication that the default notice was dated or otherwise referred to December 9, 1991, as a reference point. Id. In rendering judgment for the defendants, the trial court concluded that the default notice was deficient in two material ways, including that it failed to specify a date by which the default had to be cured, such that it was unclear when the thirty day period to cure the default would expire. Id. Unlike the default notice in *Thibodeau*, the notice in the present case was dated February 22, 2016, included several references to that date, and, when read as a whole, sufficiently notified the defendants that they had to cure their default within thirty days of February 22, 2016. Thus, the defendants' reliance on *Thibodeau* is misplaced.

In sum, the notice substantially complied with the relevant language of paragraph 22 of the mortgage. Therefore, we reject the defendants' claim that the court improperly granted the plaintiff's motion for summary judgment as to liability only on count one.

The judgment is reversed only with respect to the granting of the plaintiff's November 9, 2018 motion for judgment of strict foreclosure as to the first count of the amended complaint and the granting of the plaintiff's December 2, 2019 oral motion for judgment as to the second count of the amended complaint, and the case is remanded with direction to deny those motions and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The original complaint also named Capital One Bank (USA), N.A., Eric Demander, Jr., Mortgage Electronic Registration Systems, Inc., as nominee for Capital One F.B.S., and Webster Bank, N.A., as defendants, but those parties were defaulted for failure to appear and are not participating in this appeal. For purposes of clarity, we will refer to Russell M. Madison and Margit Madison individually by their first names and collectively as the defendants.

[2] The full name of the plaintiff is The Bank of New York Mellon, formerly known as The Bank of New York, as trustee for the Certificateholders of

CWABS, Inc., Asset Backed Certificates, Series 2005-AB2.

[3] For ease of discussion, we address the defendants' claims in a different order than they are set forth in their principal appellate brief.

[4] On May 24, 2018, pursuant to Practice Book § 14-1, Margit filed a claim for a statutory stay on the basis of a chapter 7 bankruptcy petition filed by Margit on May 23, 2018. On September 14, 2018, the plaintiff filed a notice reflecting that the United States Bankruptcy Court for the District of Connecticut had closed Margit's bankruptcy case, thereby terminating the stay.

[5] As the plaintiff's counsel conceded during oral argument before this court, the plaintiff's June 17, 2019 motion for summary judgment did not encompass count two. In contrast, during the December 2, 2019 hearing before the trial court, the plaintiff argued that the motion for summary judgment was "generic enough" to include count two. We note that the motion for summary judgment makes no mention of count two, does not contain the term "reformation," and cannot reasonably be construed to be directed to count two. Moreover, we construe the court's ruling on the motion for summary judgment as being limited only to count one, and only as to the issue of liability with respect to that particular claim. Had the court rendered summary judgment as to count two, despite the plaintiff not having moved for summary judgment with regard thereto, such a ruling would have been improper. See *Magee Avenue, LLC* v. *Lima Ceramic Tile, LLC*, 183 Conn. App. 575, 589, 193 A.3d 700 (2018) ("[a] court may not grant summary judgment sua sponte, and . . . pursuant to Practice Book § [17-44], a person seeking summary judgment . . . must file an appropriate motion addressed to it" (internal quotation marks omitted)).

[6] In its appellate brief, the plaintiff argues that the court did not commit error in rendering judgment on count two in the plaintiff's favor "when there was a clear intent by the parties to encumber 140 Seymour [Road in Woodbridge]." The merits of the plaintiff's reformation claim cannot be addressed in this appeal; rather, the claim must be resolved by the trial court in the first instance upon a proper evidentiary record.

[7] To be clear, only the December 2, 2019 judgment of strict foreclosure rendered on count one is being reversed in conjunction with our reversal of the December 6, 2019 judgment rendered on count two. The October 8, 2019 order granting the plaintiff's motion for summary judgment as to liability only on count one is not affected by our conclusions in part I of this opinion. During oral argument before this court, when asked to present the defendants' position on what effect a reversal of the judgment rendered on count two would have on the foreclosure judgment rendered on count one, the defendants' counsel stated: "I think you can affirm on . . . count one, but before the judgment is entered, there's gonna, someone's gonna have to decide what property is being foreclosed. You could say, yes, [Russell] didn't pay the debt, and we're gonna have a judgment of foreclosure, but you can't actually have the judgment until you know what property is being foreclosed." On the basis of counsel's statements, we construe the defendants' position to be that the foreclosure judgment rendered on count one must be reversed if the judgment rendered on count two is reversed, but that the granting of the plaintiff's motion for summary judgment finding the defendants liable under count one should remain undisturbed. In part II of this opinion, we address the defendants' claim challenging the propriety of the order granting the plaintiff's motion for summary judgment.

[8] The defendants do not claim that they did not receive the notice.

[9] In their appellate briefs, the defendants assert that the notice failed to comply with the mortgage on the additional ground that the notice did not provide them with at least thirty days following their receipt thereof to cure the default. The defendants did not raise this distinct claim before the trial court, and, therefore, we decline to review this unpreserved claim. See *Borg* v. *Cloutier*, 200 Conn. App. 82, 122, 239 A.3d 1249 (2020) ("Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. . . . For that reason, we repeatedly have held that we will not decide an issue that was not presented to the trial court. To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.)). Additionally, in their appellate briefs, the defendants make reference to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. During oral argument before this court, the defendants' counsel clarified that the defendants were not relying on the FDCPA in support of their claims on appeal.